**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION**                                                                                    **PLAINTIFF**

   **V.**                                                              **CIVIL ACTION NO. 3:05-cv-52WS**

**RENAL CARE GROUP, INC.**                                                              **DEFENDANT**


## ORDER

This action was brought by Plaintiff **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** [hereinafter EEOC] against defendant **RENAL CARE GROUP, INC.** [hereinafter RCG] alleging violations of Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991.  EEOC asserts that RCG employee Vanessa Gray [hereinafter Gray] was discriminated against on the basis of her race and was terminated in retaliation for opposing racially discriminatory employment practices.

Before the court are RCG's motions for summary judgment **[docket # 38]** and leave to file excess pages **[docket # 48]**, as well as motions in limine by RCG to exclude testimony by the EEOC investigator **[docket # 52]**, testimony by a non-party former RCG employee **[docket # 54]**, and introduction of EEOC's determination letter and investigative file **[docket # 56]** and a motion by EEOC to exclude references to Gray's previous employment history **[docket # 58, refiled as # 59]**.

## JURISDICTION

Plaintiff asserts a claim under federal law;[1] therefore, this court holds jurisdiction pursuant to 28 U.S.C. § 1331.[2] The alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Southern District of Mississippi, Jackson Division.

## FACTS

EEOC is the United States governmental agency charged with administration, interpretation, and enforcement of Title VII, and holds express authority to bring this action[3]. Defendant RCG is an employer with at least fifteen (15) employees doing business in Jackson, Mississippi, in an industry affecting commerce.[4] Gray, the alleged victim of RCG's discriminatory actions, was employed by RCG as a facility manager at its Jackson Medical Mall location from May 14, 2001, until her termination on January 22, 2003. Darla Lovelace, the Director of Operations over multiple RCG facilities and the direct supervisor of those facilities' managers, was Gray's immediate supervisor.

Gray alleges that RCG retaliated against her for voicing a complaint regarding racially disparate disciplinary actions RCG undertook towards an African-American

---

[1] EEOC charges violations of Title 42 U.S.C. § 2000e-5(f)(1) and (3) and Title 42 U.S.C. § 1981a.

[2] Title 28 U.S.C. § 1331 provides the district courts with original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."

[3] 42 U.S.C. § 2000e-5(f) authorizes civil action by the EEOC or the person aggrieved by an unlawful employment action that discriminates on the basis of race, color, religion, sex, or national origin.

[4] 42 U.S.C. § 2000e(b), (g), and (h) define the scope of this Act to include employers of fifteen or more employees whose "activity, business, or industry" involves interstate commerce and in which a labor dispute would "hinder or obstruct commerce or the free flow of commerce."

nurse and a White nurse.  Gray reported the African-American nurse for allowing a non-licensed technician employee to manipulate a patient's fistula needle.  Gray's supervisor, Lovelace, determined this to be a safety policy violation and reported the nurse to the Mississippi Board of Nursing [hereinafter MBON].

The comparator White nurse was in training and was caring for patients under Gray's supervision when the nurse complained that she had too many patients.  Gray reports that this nurse "yelled" in front of patients and also in her office, and then stated she was leaving the facility.  Gray told her that if she left she would be terminated for patient abandonment.  The nurse left and went to RCG's main office, where she voiced complaints about the facility.  Lovelace instructed her to return to work, and notified Gray that Lovelace would meet with them.  Lovelace now contends that other staff nurses also had complained about Gray's management of the facility.  Those complaints were not addressed with Gray, and she says she was unaware of them.

Later that day, Lovelace met first with the nurse and Gray.  Lovelace drafted a written warning to the nurse but did not report the incident to the MBON.  Lovelace allegedly said that it was not a reportable offense.  Lovelace also drafted a verbal warning to Gray for failure to conduct documented monthly staff meetings and weekly RN meetings, inconsistent patient scheduling, and failure to enforce infection control policies.  Lovelace did not issue either warning that day.

Lovelace met with Gray again on January 13, 2003.  At this meeting, Gray complained to Lovelace about perceived racially disparate employment practices by RCG, noting in particular that the White nurse was not reported to the MBON for what Gray perceived as a serious safety violation.  Lovelace left the office and subsequently

returned with the written verbal warning, Gray's first negative performance counseling at RCG.  On January 22, 2003, RCG terminated Gray's employment without first following its progressive discipline procedure.[5]  Gray was later replaced by another African-American.  Three White facility managers received progressive discipline in keeping with RCG's written policy through performance correction notices.

The written verbal warning issued to Gray only addressed staff meetings and infection control issues;  however, RCG now contends that other serious job deficiencies were addressed by way of monthly reports titled "Division Manager Monthly Review" [hereinafter DMMR], and that the DMMRs gave Gray notice of performance deficiencies and form part of the basis for her termination.  No evidence exists to show that any other facility manager was ever provided notice of deficiencies by way of DMMRs.  RCG also relies in part on a "default letter" sent by University Medical Center [UMC] to point out problems at the Medical Mall facility.  Gray contends that she was never informed of the default letter until after her termination, and that deficiencies listed were not her responsibility.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate when the material facts are undisputed and the applicable law directs a verdict for the movant.  *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 486 (5th Cir. 2004);  *Dennett-Murray Corp. v. Bone*, 622

---

[5] Renal Care's four-step disciplinary policy consists of a verbal warning, written warning, final written warning, and finally termination.  For severe disciplinary violations, such as compromising patient safety, initial steps may be skipped.  Gray received only the first step, a verbal warning.

F.2d 887, 892 (5th Cir. 1980); Fed. R. Civ. P. 56(c).[6] The court's first task is to determine if material facts are in dispute. *Am. Home Assurance Co.*, 378 F. 3d at 486. If there are no disputed material facts, the court next turns to the applicable law, which is applied to evidence viewed in a light most favorable to the non-movant. *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So.2d 845, 847 (Miss. 2001).

In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); rather, "it is the province of the jury to access the probative value of the evidence." *Dennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982).

## **LAW AND ANALYSIS**

### *Racial Discrimination*

To prevail on its Title VII racial discrimination claim, EEOC must set out a prima facie case showing that (1) Gray was a member of a protected class; (2) she was qualified for her position as facility manager; (3) she suffered a discriminatory adverse employment action; and (4) she was either replaced by a person not within her protected class *or* otherwise treated differently than similarly situated persons outside

---

[6] Rule 56 provides guidelines for summary judgment, declaring it appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, . . . , show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997); *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995). As an African-American, Gray was a member of a protected class, and her termination was indisputably an adverse employment action.

      The parties dispute whether she met the qualifications for her position. Of note, however, are Gray's previous employment evaluation, merit raise, and awards of semi-annual bonuses for meeting and exceeding operating standards.[7] Gray was replaced by another African-American, but contends that comparator white facility managers were treated more leniently under RCG's progressive discipline policy regarding deficiencies.[8] This evidence suffices to establish a *prima facie* case of discrimination.

      The defendant next has the opportunity to respond with a non-discriminatory reason for Gray's termination. *McDonnell Douglas Corp*, 411 U.S. at 802; *Meinecke*, 66 F.3d at 83. RCG contends that Gray was terminated for performance deficiencies. In support of this argument, RCG relies in part on the default letter and DMMRs, alleged complaints of staff and physicians, and on the written verbal warning. Even if RCG were able to establish a non-discriminatory basis for its action, EEOC may rebut this by showing that the proferred non-discriminatory basis for termination is pretextual. *McDonnell Douglas Corp,* 411 U.S. at 804; *Meinecke*, 66 F.3d at 83.

---

[7] Plaintiff's memo in opposition to summary judgment provides exhibits establishing that Gray received 95 out of a possible 100 on her only written performance evaluation, for which she received a merit raise, and that she also received semi-annual bonuses for performance. See Exhibits 2, 5.

[8] Three other facility managers, Roberta Wilson, Susan Burnside, and Mike Green, received numerous warnings through the progressive discipline policy. Roberta Wilson also received a written correction plan.

EEOC contends that the default letter and DMMRs did not provide Gray with notice or an opportunity to correct perceived deficiencies. The Fifth Circuit previously has held that a failure to follow company policy and procedure in providing a correction plan created a jury question as to pretext. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir. 2000). Gray's previous evaluation, raise, and bonuses, along with factual disputes regarding policy, notice, and responsibility, create a jury question as to whether RCG's proffered reasons for termination are pretextual.

### *Retaliation*

To prevail on this claim EEOC must set out a prima facie case showing that (1) Gray engaged in a protected activity; (2) she suffered an adverse employment action; (3) and, a causal link existed between the protected activity and the adverse action. *Banks v. East Baton Rouge Parish School Board*, 320 F.3d 57-, 570-75 (5th Cir. 2003).

EEOC contends that Gray's allegation of racially discriminatory treatment was protected speech. Termination is indisputably an adverse employment action. Temporal proximity may be used to infer the causal connection required for a *prima facie* case of retaliation. *Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 118 S. Ct. 366 (1997).

In this case, only ten days passed between Gray's complaint and her termination. If RCG can offer a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence of a retaliatory motive. *Id.* RCG is not liable for unlawful retaliation if it can show that Gray would have been terminated even in the absence of the protected conduct. *Jack v. Texaco*

*Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984).  Again, the parties dispute material facts and the evidence presented raises factual issues sufficient to present a jury question.

## MEDIATION

The parties now seek leave of the court to pursue mediation with an agreed-upon mediator, with defendant RCG to bear costs of mediation.  As the parties are in agreement upon this course of action, the court will remove this lawsuit from the current trial docket to allow time for the mediation process.  The parties are to report back to the court within ten days of the completion of mediation, so that the court may return this lawsuit to the trial docket if necessary.

## HOLDING

The court finds that genuine issues of material fact exist, and that plaintiff has presented a *prima facie* case which defendant has not overcome.  For these reasons, defendant's motion for summary judgment is **DENIED**.  Defendant's motion for leave to file excess pages **[DOCKET # 48]** is **MOOT**.

RCG's motion to exclude testimony of the EEOC investigator **[docket # 52]** is **GRANTED**.  The court notes that EEOC is not likely to need the investigator to establish a foundation for documents contained in the investigative file, as defendant will have an opportunity to object to documents listed in the pretrial order and objections will be addressed at that time.  Further, it is unlikely that defendant will object to the authenticity of documents defendant itself authored.  RCG's motion to exclude testimony from a former employee **[docket # 54]** is conceded and thus **GRANTED.**

RCG's motion to exclude the EEOC determination letter and investigative file **[docket # 56]** is **DENIED** with the understanding that plaintiff will only admit those portions of the file approved by the court.  Parties are encouraged to stipulate to any exhibits where authenticity or other objections are not an issue.

EEOC's motion in limine to exclude reference to Gray's previous employment history **[docket # 58, refiled as # 59]** is **DENIED** with the understanding that the issue will be further addressed at trial, and defendant is instructed to notify the court prior to any attempt to introduce this matter during trial.

**SO ORDERED**, this the 9th day of June, 2006.

                                       s/ HENRY T. WINGATE

                                       CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:05-cv-52WS

Order